UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY ALAN MORGAN,

                      Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00407 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Jeffrey Alan Morgan ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 11), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 9) is granted in part and Defendant's motion (Dkt. 11) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on April 9, 2015.  (Dkt. 6 at 20, 122).[1]  In his application, Plaintiff alleged disability beginning April 1, 2013, due to anxiety and depression.  (*Id.* at 20, 116).  Plaintiff's application was initially denied on August 26, 2015.  (*Id.* at 20, 123-28).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird in Buffalo, New York, on December 7, 2017.  (*Id.* at 20, 49-115).  On February 22, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 17-32).  Plaintiff requested Appeals Council review; his request was denied on January 31, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 4-6).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on September 30, 2017.  (Dkt. 6 at 22).  At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful work activity from April 1, 2013, the alleged onset date, through his date last insured of September 30, 2017. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "lumbar strain, left shoulder arthritis, obesity, a depressive disorder, and an anxiety disorder." (*Id.* at 23). The ALJ further found that Plaintiff's medically determinable impairments of joint pain, headaches, hypertension, hyperlipidemia, edema, cellulitis, dermatitis, sinusitis, sleep apnea, sleep disturbance, insomnia, fatigue, hypogonadism, hearing loss, tinnitus, history of poly-substance abuse, tobacco use disorder, smoking cessation, and vitamin deficiencies were non-severe. (*Id.* at 23).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02B, 1.04, 12.04, and 12.06 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (*Id.* at 23-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b):

> because [Plaintiff] was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for up to six hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday. Although [Plaintiff] was unable to crawl or climb ladders, ropes, or scaffolds, he was occasionally able to stoop, kneel, crouch, and climb ramps and stairs. [Plaintiff] was frequently able to reach in all directions with his left upper extremity. [Plaintiff] was able to engage in work limited to simple, routine tasks (that can be learned after a short demonstration or within thirty days) and work that allows a person to be off task for 5% of an eight-hour workday (in addition to regularly scheduled breaks). [Plaintiff] was able to engage in work that did not require more than simple work-related decisions, and he was occasionally able to interact with co-workers. [Plaintiff] was able to

> engage in no more than superficial interaction with the public, and he was
> able to engage in work that did not require teamwork (such as on a production
> line).  [Plaintiff] was able to engage in work that required doing the same
> tasks every day with little variation in location, hours, or tasks, and he was
> able to engage in work that was subject to no more than occasional
> supervision.

(*Id.* at 26).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner-housekeeping, mail clerk, and cafeteria attendant.  (*Id.* at 31).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 32).

## II.   <u>Remand of this Matter for Further Proceedings is Necessary</u>

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing (1) the physical RFC is not supported by substantial evidence, because the ALJ improperly evaluated the opinion of Sherry Withiam-Leitch, M.D. and formulated an RFC based on his lay interpretation of bare medical findings, and (2) the mental RFC is not supported by substantial evidence, because it is based on the ALJ's lay interpretation of bare mental health findings.  (Dkt. 9-1 at 1).  The Court has considered each of these arguments and, for the reasons discussed below, finds that the physical RFC is not supported by substantial evidence because the ALJ erred in his assessment of Dr.

Withiam-Leitch's opinion, and this error requires remand for further administrative proceedings.

## A.   **Assessment of the Physical RFC**

Plaintiff's first argument is that the ALJ erred in his assessment of the physical RFC. Specifically, Plaintiff contends that the ALJ "improperly rejected the only physical functional assessment in the record and then relied on his lay interpretation of bare medical findings to determine Plaintiff could perform light work and frequently reach in all directions with his left arm with no limitations with bending, twisting, stooping, or hearing, despite his impairments." (Dkt. 9-1 at 13). In response, Defendant contends that the ALJ properly based the physical RFC on all the evidence in the record. (Dkt. 11-1 at 19).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a

medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

At the administrative hearing, Plaintiff testified that pain in his lower back and left shoulder prevented him from working. (Dkt. 6 at 77-78). Plaintiff had "a lot of pain in [his] shoulder" and his left arm was "extremely weak." (*Id*. at 78). Plaintiff explained that his shoulder had been bothering him for one year and had worsened since he worked on a railroad. (*Id*.). Plaintiff described his shoulder pain as "like a throbbing," and rated his pain as "[p]robably a nine" at worst. (*Id*. at 81). Regarding his back pain, Plaintiff explained that it had been an issue since he left the service, and that it had "gotten progressively worse over the years." (*Id*. at 78). He testified that his back bothered him daily, and described his back pain as "throbbing," or "sharp," and "really . . . weak." (*Id*. at 81-82). As a result of his impairments, Plaintiff testified that he could stand for 45 minutes to one hour before needing to sit down, and that he could sit for one hour to 90 minutes before needing to stand and stretch. (*Id*. at 82-83). Plaintiff had difficulties lifting and carrying, but he could lift one gallon of milk. (*Id*. at 83). Plaintiff testified that he could lift "maybe 50 pounds," but if he was using his back to lift, only "30, 40 pounds at the very most." (*Id*.). Plaintiff was unable to bend. (*Id*.).

At step two of the sequential analysis, the ALJ assessed severe impairments, including lumbar strain and left shoulder arthritis. (Dkt. 6 at 23). Despite his impairments, the ALJ explained that Plaintiff was capable of performing the requirements of light work, and further found that Plaintiff could "occasionally" stoop, kneel, crouch, and climb ramps and stairs, and could "frequently . . . reach in all directions with his left upper extremity."

(*Id.* at 26).   In assessing the RFC, the ALJ explained that he gave "little weight" to the

opinions offered by Dr. Withiam-Leitch:

> Sherry Withiam-Leitch, M.D., noted in a July 2017 VA Comp & Pen report
> that the claimant was unable to work with the left arm overhead, unable to
> lift, carry, push, or pull twenty pounds with the left arm, and unable to run,
> bend, twist, stoop, or crawl, but these restrictions are unsupported by clinical
> findings or detailed explanation, including Dr. Leitch's own findings of full
> strength and reflexes in all muscle systems, and appear to be based on the
> claimant's self-reporting, so they are also given little weight (Exhibit 5F,
> pages 171-188).

(*Id.* at 29-30).

The Court has reviewed the two reports prepared by Dr. Withiam-Leitch, which are

the only assessments in the record addressing Plaintiff's physical functional limitations.

(*See* Dkt. 6 at 64-65).   The first report addresses Plaintiff's limitations caused by

lumbosacral strain (*id.* at 754), and the second report addresses Plaintiff's limitations

caused by degenerative arthritis in his left shoulder (*id.* at 761).   The reports were based on

an in-person examination of Plaintiff on July 25, 2017.   (*Id.* at 754-55, 761).   Dr. Withiam-

Leitch explained in both reports that "[w]hile in the service, the veteran developed left

shoulder pain.   He has contin[u]ed with pain that is increasing in severity.   He feels his left

shoulder is weak.   He is limited with reaching wi[th] left arm.   [H]e has to twist his low

back whenever he reaches with left arm.   [The] twisting has led to constant low back pain."

(*Id.* at 755, 762).   Dr. Withiam-Leitch opined that Plaintiff's impairments impacted his

ability to work, including that he was unable to work with his left arm overhead; could not

lift/carry/push/pull 20 pounds with his left arm; was limited with reaching above with his left arm; and was unable to run, bend, twist, stoop, or crawl.  (*Id.* at 760-61, 186-87).

Contrary to the ALJ's statement that Dr. Withiam-Leitch's opinions were "unsupported by clinical findings or detailed explanation," both opinions were offered based on an in-person examination and are supported by specific clinical testing.  For example, Dr. Withiam-Leitch's assessment of Plaintiff's back impairment was based on her determination that Plaintiff's range of motion was "[a]bnormal or outside of normal range."  (*Id.* at 756).  Specifically, Plaintiff's forward flexion was 0 to 40 degrees out of 90 degrees, and his extension, right and left lateral flexion, and right and left lateral rotation was 0 to 10 degrees out of 30 degrees.  (*Id.*).  Dr. Withiam-Leitch opined that this abnormal range of motion contributed to functional loss, including that Plaintiff was "less able to reach."  (*Id.*).  Dr. Withiam-Leitch also noted that Plaintiff exhibited pain during the range of motion exams, and he had "evidence of pain with weight bearing."  (*Id.* at 757). Plaintiff's muscle strength testing (hip flexion, knee extension, ankle plantar flexion, ankle dorsiflexion, and great toe extension) was normal, and he did not have muscle atrophy.  (*Id.* at 757-58).  A sensory examination was normal, but Plaintiff was unable to perform a straight-leg raising test.  (*Id.* at 758-59).

Further, Dr. Withiam-Leitch explained that Plaintiff's left shoulder range of motion was "[a]bnormal or outside of normal range."  (*Id.* at 763).  Plaintiff's flexion was 0 to 90 degrees out of 180 degrees, his abduction was 0 to 110 degrees out of 180 degrees, his external rotation was 0 to 80 degrees out of 90 degrees, and his internal rotation was 0 to 70 degrees out of 90 degrees.  (*Id.* at 764).  Dr. Withiam-Leitch opined that Plaintiff's

decreased range of motion contributed to functional loss, including that Plaintiff was less able to reach.  (*Id.*).  Plaintiff experienced pain on the range of motion exams, and there was evidence of pain with weight bearing.  (*Id.*).  Dr. Withiam-Leitch also noted that there was objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue, as well as crepitus.  (*Id.*).  Plaintiff's muscle strength testing was normal, and there was no muscle atrophy.  (*Id.* at 765-66).  Dr. Withiam-Leitch also noted that diagnostic testing documented degenerative or traumatic arthritis in Plaintiff's left shoulder.  (*Id.* at 769).

The RFC requires Plaintiff to "frequently" reach in all directions with his left upper extremity and "occasionally" stoop, kneel, crouch, and climb ramps and stairs.  "In the context of exertional limitations, 'frequently' means 'from one-third to two-thirds of the time' and 'occasionally' means 'from very little up to one-third of the time.'"  *Newton v. Commissioner*, No. 5:14-CV-904(TJM/ATB), 2015 WL 5117768, at *5 n.3 (N.D.N.Y. Aug. 31, 2015) (quoting SSR 83-14, 1983 WL 31254, at *2), *Report & Recommendation adopted*.  The RFC is plainly at odds with the opinion offered by Dr. Withiam-Leitch, who assessed that Plaintiff was unable to work with his left arm overhead and could not run, bend, twist, stoop, or crawl.  While not all the testing performed by Dr. Withiam-Leitch was abnormal, Plaintiff exhibited significant limitations on range of motion testing and pain which, according to Dr. Withiam-Leitch, contributed to Plaintiff's functional limitations.  The Court notes that physical therapy notes from July and August 2017 are

consistent with Dr. Withiam-Leitch's assessment of positive clinical findings, including reduced range of motion and pain in Plaintiff's left shoulder.  (*See, e.g.*, Dkt. 6 at 685, 736).

The ALJ's failure to fully and adequately address the opinion offered by Dr. Withiam-Leitch and the evidence supporting her opinion—which provides the only assessment of Plaintiff's physical functional limitations in the record—is problematic. Although Dr. Withiam-Leitch was not Plaintiff's treating physician, the ALJ was nonetheless required to offer a satisfactory explanation as to why he did not find her assessment of Plaintiff's physical functional limitations persuasive.  *See Pappas v. Saul*, 414 F. Supp. 3d 657, 675 (S.D.N.Y. 2019) ("[t]he requirement to explain the evaluation of a physician's medical opinion applies to non-treating physicians as well.") (citations omitted) (alteration in original).  Further explanation by the ALJ was particularly important in this case, where the vocational expert testified that the jobs he identified, *i.e.*, mail clerk, cafeteria attendant, and cleaner housekeeping, require occasional bending and stooping. (*See* Dkt. 6 at 113).  The ALJ's failure to provide a proper explanation leaves the Court to conclude that the ALJ substituted his lay judgment for a competent medical opinion.

Defendant points to Plaintiff's testimony that he could walk, stand and sit continuously, and lift and carry up to 50 pounds as contradicting Dr. Withiam-Leitch's assessment of Plaintiff's limitations.  (*See* Dkt. 11-1 at 23).  However, the ALJ did not discount Dr. Withiam-Leitch's opinion on that basis, and Defendant's after-the-fact explanation as to why the ALJ rejected her opinion cannot serve as a substitute for the ALJ's findings.  *See Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014) (rejecting Commissioner's attempt to justify the ALJ's failure to incorporate a treating physician's

opinion into his RFC); *see also Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action); *Michels v. Berryhill*, No. 1:15-CV-00688 (MAT), 2018 WL 1081013, at *3 (W.D.N.Y. Feb. 28, 2018) ("[i]t is not the role of this Court to weigh the evidence of record and determine in the first instance whether or not Plaintiff's learning disorder constituted a severe impairment—that task falls to the ALJ, who failed to fulfill his obligation in this case."). Further, Plaintiff's testimony does not directly contradict Dr. Witham-Leitch's opinion regarding Plaintiff's inability to work overhead with his left arm, bend, twist, stoop, or crawl.[2]

In sum, there is evidence in the record, including Plaintiff's testimony, opinion evidence offered by Dr. Witham-Leitch, and imaging studies, which support Plaintiff's claim that he has functional limitations as a result of his left shoulder and back impairments. While the ALJ is not required to take this evidence at face value, he must adequately

---

[2]    Defendant contends that Plaintiff "failed to allege that the left shoulder impairment had lasted, or w[as] expected to last for the requisite 12-month durational period." (*See* Dkt. 11-1 at 20). Defendant's argument is misplaced. First, Plaintiff testified at the administrative hearing in December 2017 that his shoulder had been bothering him "for a year." (Dkt. 6 at 78). Plaintiff further clarified that his shoulder had bothered him "even when [he] was working on the railroad," but explained that the pain "wasn't that bad," that his back bothered him then as well, and although he used to "pop Advil and pop Tylenol, and deal with it," the pain had "gotten progressively worse over the years." (*Id.*). Further, whether Plaintiff's left shoulder impairment meets the durational requirement is relevant to the ALJ's step two analysis, *i.e.*, whether an impairment qualifies as "severe." *See, e.g., Saez v. Colvin*, No. 14-CV-858-JTC, 2016 WL 96180, at *3 (W.D.N.Y. Jan. 8, 2016) ("[T]he ALJ must decide if the claimant has a 'severe' impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which 'significantly limits [the claimant's] physical or mental ability to do basic work activities. . . .'") (citations omitted) (alteration in original). As explained above, the ALJ found that Plaintiff's left shoulder arthritis was "severe" under the Act.

explain why he has failed to credit this evidence and how other evidence in the record supports Plaintiff's ability to perform the activities required by the RFC. Accordingly, remand is required. On remand, should the ALJ determine that Dr. Witham-Leitch's opinion is entitled to only little weight, he must adequately explain why he has rejected her opinion. Further, the ALJ must explain how the evidence in the record supports the specific limitations included in the RFC.

### B. Plaintiff's Remaining Argument

As set forth above, Plaintiff has identified an additional reason why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 9) is granted to the extent that the matter is remanded for further administrative proceedings.

The Commissioner's motion (Dkt. 11) is denied.  The Clerk of Court is directed to enter judgment and close this case.

      SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  June 25, 2020
       Rochester, New York